(71 App. Div. 574.)

BACON v. GROSSMANN.

(Supreme Court, Appellate Division, First Department.   May 9, 1902.)

1. GUARANTY—CORPORATION—ASSIGNMENT OF STOCK—RIGHTS OF ASSIGNEE.
   A corporation, on the winding up of another corporation, took the assets of the latter under an agreement with its stockholders to pay them a certain sum per share on their stock if they did not realize a certain amount therefrom. Thereafter defendant, who was a stockholder, transferred his stock to plaintiff, "subject to" the agreement with the corporation taking the assets, but this corporation afterward made a payment on its guaranty to the defendant. The transfer of the stock was to settle a controversy, and the evidence showed that the parties understood that plaintiff should receive the benefit of the agreement with the corporation. *Held*, that plaintiff was entitled to the money received under the guaranty by the defendant.

2. SAME—LIABILITY OF GUARANTOR.
   The purchaser of the stock could only maintain suit against the seller to recover the payment on the guaranty by the corporation in good faith to the seller, and not against the corporation.

Appeal from trial term, New York county.

Action by Nathaniel T. Bacon against Ignatius R. Grossmann. From a judgment for defendant (74 N. Y. Supp. 878), and from an order denying a new trial, the plaintiff appeals.   Reversed.

The plaintiff, as assignee of Lee, Higginson & Co., brought this action to recover the sum of $3,100, alleged to be due from the defendant by virtue of an agreement of settlement which he made with the plaintiff's assignor on the 9th day of April, 1895. The written memorandum of the agreement, which is set forth in the complaint, is as follows:

"Memorandum that, Lee, Higginson & Co. having this day transferred to Ignatius R. Grossmann 200 preferred shares of General Electric Company, and received from him 310 preferred shares Northwest General Electric Co., subject, as to these 310 preferred shares, to an agreement with the General Electric Company, dated November 8, 1893, concerning such preferred shares, and such transfers having been made upon the terms that this agreement should be executed, it is agreed, in consideration thereof, that the said transfer and receipt shall be full satisfaction and discharge of any and all claims and demands that the said Ignatius R. Grossmann may have against said Lee, Higginson & Co., or any of them, on account of any transaction between them relating to the purchase or sale of any shares of either of said companies, or of any other transaction that has been had between them up to this day. And the said Ignatius R. Grossmann shall, upon request, execute a release of all such claims and demands, under his own hand and seal.
                         "Ignatius R. Grossmann, by Alfred Hemenway."

On the following day the defendant did execute a general release of all demands. The agreement referred to in the memorandum as made with the General Electric Company on November 8, 1893, is annexed to the complaint, and was an agreement between that company and preferred stockholders of the Northwest General Electric Company with reference to winding up the affairs of the latter company, whereby the General Electric Company, a leading creditor, was to receive certain assets, and to assure the stockholders $10 per share on their stock; the shareholders not to receive more than $65

per share. The words of the agreement are that "if, upon the liquidation of the affairs of the Northwest General Electric Company, * * * the shareholders * * * shall not receive $65 per share, it (the General Electric Company) will pay to such preferred shareholders as may assent to this agreement * * * a sum sufficient to give such preferred shareholders $65 upon each of their shares: provided, however, that the General Electric Company shall not be required, in any event, to thus pay to said preferred shareholders more than $10 per share upon their stock." The complaint further avers that the defendant had signed this agreement, being then the owner of the 310 shares, and that after he had made his agreement of settlement with Lee, Higginson & Co., he received from the General Electric Company, in October, 1896, the sum of $3,100, covering the guarantied payment of $10 per share in accordance with the agreement of November 8, 1893; that the defendant did not inform plaintiff's assignor of the receipt of this money, and did not execute to the General Electric Company a release, and that the plaintiff, who received from Lee, Higginson & Co. 110 of the shares on June 5, 1895, and the remainder on January 24, 1896, did not know of the payment of $3,100 made to the defendant until September 1, 1896, and on April 20, 1897, the firm of Lee, Higginson & Co. having that day transferred to him all their right, title, and interest in and to such $3,100, he demanded the same of the defendant, which demand was refused. The defendant's answer denied the right of the plaintiff or his assignor to receive the $3,100 paid by the General Electric Company, and set up a counterclaim growing out of transactions with Lee, Higginson & Co. prior to the settlement agreement made on April 9, 1895. The reply meets the counterclaim by pleading the release executed by defendant April 10, 1895.

The court, at close of plaintiff's case, dismissed the complaint, and, upon defendant's consent, the counterclaim, also. From the judgment entered, the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Selden Bacon, for appellant.
Gormly J. Sproull, for respondent.

O'BRIEN, J. The issue presented by the pleadings was whether the agreement of settlement of April 9, 1893, between Lee, Higginson & Co. and the defendant, gave to plaintiff's assignor the right to receive from the General Electric Company the benefits of the agreement of November 8, 1893, and to any moneys which might be paid thereunder. The shares were transferred "subject * * * to an agreement * * * dated November 8, 1893, concerning such preferred shares"; and thus it appears that both parties were entirely familiar with the agreement made with the General Electric Company, and the limitation imposed, that no more than $65 per share should be received, and the benefit that might accrue by the payment of $10 a share by that company. Can it be said that the parties intended this stock to be transferred with the limitation imposed by the agreement that no more than $65 per share should be received thereon, and with the benefit of the $10 per share reserved to the defendant? The words used are "subject to," but did not this mean subject to the receipt of benefits, as well as the imposition of limitations? What is the ordinary meaning to attach to the words "subject to"? Is it not that it is subject to something which impairs its value? The provision that the General Electric Company was to get all over $65 per share, with the accompanying guaranty of $10 per share, may have been regarded as a cloud upon the full title to the stock. Although, therefore, the transfer was

"subject to" the agreement, it gave to the transferee the benefits, as well as it imposed the disadvantages, provided for in that agreement. That seems the reasonable interpretation, and, from the correspondence admitted on the trial, it is conclusively shown that this was the interpretation which the defendant himself adopted. Thus he replied to the General Electric Company on November 27, 1895, after receipt of the money, as follows:

"I beg to say that, as I no longer hold the shares, I cannot sign the papers you mention, and that I am holding the proceeds of the check for the benefit of whom it may concern."

And thereafter he wrote the same company, in reply to their repeated request for return of check, that:

"I am advised that I have, under the circumstances, no right to deliver the amount, except to the present holder of the stock and on his presentation of same to me for indorsement of the amount. * * * Since the holder of the stock has all this time not claimed the amount, I am furthermore led to believe that, for reasons resulting from legal complications, he has decided to relinquish his claim in my favor."

Thereafter defendant, acting on advice of his attorneys, refused, upon demand, to deliver the money to plaintiff.

The circumstances under which the settlement agreement was made are also shown by the correspondence and by the testimony, and that there was more than a mere assignment of shares clearly appears. The evidence is that prior to April, 1895, the defendant received from Lee, Higginson & Co. these same 310 shares of Northwest General Electric Company, giving in exchange 200 shares of General Electric Company, and the sum of $11,300. Thereafter, when the affairs of the Northwest General Electric Company were seen to be in bad shape, and negotiations with the General Electric Company began, resulting in the agreement of November 8, 1893, the defendant made claims against Lee, Higginson & Co., asserting that they had made false representations as to the stock, and demanding reimbursement. The claims were presented by defendant's attorney, Hemenway, and the correspondence shows that Lee, Higginson & Co. resented the assertions of false representation, and denied that they were in any way liable, but finally assented to transferring to Grossmann the number of General Electric shares they had received from him, upon his transferring the shares he had bought from them; this to be "by way of compromise," and "to end all claims by him." Mr. Hemenway on April 6, 1895, wrote to Mr. Grossmann:

"The only thing that was left me was to accept a proper compromise. It was the ultimatum of Lee, Higginson & Co. They would not pay a dollar, or accept less than the 310 shares, * * * and give you 200 shares of General Electric preferred. To-day I closed controversy on those terms."

Grossmann then wrote (April 7th):

"I have to accept the compromise, under the circumstances. * * * I shall send the 310 shares N. W. Electric."

The 310 shares were accordingly indorsed and forwarded; the date being April 8, 1895. The memorandum was signed, as stated, April 9, 1895, by Hemenway; and the release by the defendant, April 10, 1895.

Reading the terms of the agreement made by defendant's attorney, and ratified by the execution of defendant of the release as therein set forth, in the light of the facts disclosed by the correspondence, and the interpretation placed upon the contract by the defendant himself, we think it appears that what was intended was more than a mere assignment of shares, and that, under the agreement, plaintiff's assignor took the shares of Northwest Electric Company, not free and unlimited, but with the limitation imposed and the benefits conferred under the agreement with the General Electric Company, with the terms of which both were fully conversant. Hence it appears that the defendant obtained money under a mistake of fact on the part of the payor that defendant was still the owner of the stock, and the plaintiff could maintain an action for its recovery as for money had and received. The guarantied payment, by its terms, was incidental and appurtenant to the stock, and the rights under it passed by transfer of the stock. The contract with the General Electric Company was not made with the defendant personally, but was with him as a preferred shareholder; and, as pointed out, the guarantied payment of $10 per share was intended for the holders of such preferred stock. This was the construction placed upon it by all the parties, including defendant, and the rights as well as the limitations imposed by that contract were intended to be transferred with the transfer of the stock.

The argument that plaintiff's remedy is against the General Electric Company is not sound. That company paid the money in good faith to the person whom it supposed held the stock, and without notice that defendant had parted with the stock. The wrong party thus having received the money, and the plaintiff being without remedy as against the payor, it is but equitable and just that he should recover the money which, under a mistake of fact, was paid to and received by the defendant.

We think, therefore, that the judgment dismissing the complaint and the order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.